IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED FOOD & COMMERCIAL WORKERS' UNION, LOCAL NO. 293, <br><br> Plaintiff, <br><br> v. <br><br> NOAH'S ARK PROCESSORS, LLC, <br><br> Defendant. | 8:18CV466 <br><br> ORDER |

This case involves an ongoing labor dispute between plaintiff United Food & Commercial Workers' Union, Local No. 293 ("union") and defendant Noah's Ark Processors, LLC ("Noah's Ark") about orientation sessions the union is entitled to hold with Noah's Ark's employees pursuant to a collective bargaining agreement (Filing No. 23-2) and related arbitration award (Filing No. 23-4). Since confirming (Filing No. 31) the arbitration award on January 28, 2019 ("confirmation order"), the Court has repeatedly had to intervene in the parties' scheduling of those orientation sessions.

On March 8, 2019, the Court granted the union's first Motion for an Order to Show Cause Why Noah's Ark Should Not Be Held in Contempt (Filing No. 32). The Court ordered (Filing No. 41) Noah's Ark to show cause why it should not be held in contempt and sanctioned for failing to follow the terms of the arbitration award and the confirmation order. While the Court found that Noah's Ark (and, to a lesser degree, the union) had engaged in improper gamesmanship and unprofessional behavior, the Court denied (Filing No. 45) the union's request for a contempt order and sanctions *at that time*. Though skeptical, the Court accepted Noah's Ark's explanation for its failure to comply and its promise to comply in the future.

On July 10, 2019, the Court denied (Filing No. 54) the union's Second Motion for an Order to Show Cause Why Noah's Ark Should Not Be Held in Contempt (Filing No. 49), deciding the parties should settle their scheduling issues by themselves. The Court informed them it was (1) unwilling to micromanage the orientation process and (2) wary of allowing routine requests for contempt proceedings to disrupt or supplant the normal grievance and arbitration procedures in the collective bargaining agreement. *Cf. Unite Here Local 1 v. Hyatt Corp.*, 862 F.3d 588, 597 (7th Cir. 2017) ("[C]ourts have expressed a concern that prospective enforcement of an arbitration award will effectively nullify the parties' agreement to resolve their disputes by way of arbitration.").

On the union's Third Motion for an Order to Show Cause Why Noah's Ark Should Not Be Held in Contempt (Filing No. 57), the Court held a hearing (Filing No. 64) to address the parties' "ongoing inability to develop a reasonable orientation schedule as required by this Court's prior orders." The Court ultimately denied the union's motion, again ordering the parties to meet and confer to develop an appropriate schedule.

When the parties again failed to agree, the Court reluctantly stepped in (Filing No. 67). Chastising "the parties (primarily Noah's Ark)" for having done "little or nothing to comply with the simple and straight-forward arbitration award" and noting "Noah's Ark ha[d] virtually ignored the provisions of the arbitration award and related provisions of the collective bargaining agreement," the Court ordered Noah's Ark to facilitate ten months of biweekly orientation sessions pursuant to a specific schedule set by the Court ("scheduling order").

Shortly after those sessions began, Noah's Ark advised the union it was declaring an impasse in the parties' ongoing collective bargaining. On January 29, 2020, Noah's Ark—without discussion—abruptly informed the union it was cancelling the orientation session for that day and would not schedule future sessions because "Noah's Ark's final offer to the Union d[id] not provide . . . Union representatives the opportunity to discuss

the Union's role at its Hastings plant and solicit signatures on applications and dues authorization forms." Noah's Ark did not ask the Court for relief from the scheduling order before taking those drastic steps.

Two days later, Noah's Ark belatedly moved (Filing No. 68) for relief from the scheduling order based solely on in its declaration of impasse. In response, the union challenged (Filing No. 71) Noah's Ark's declaration of impasse[1] and again moved (Filing No. 70) for an order to show cause why Noah's Ark should not be held "in contempt for knowingly and deliberately violating the Court's" scheduling order. In addition to requesting that the Court order Noah's Ark "to immediately allow [the union] to resume conducting orientation sessions in accordance with the [scheduling order], with the addition of additional sessions to make up for all sessions that were cancelled by" Noah's Ark, the union "asks the Court to impose a fine of $400 per day for each day [Noah's Ark] fails to cure its contemptuous behavior and any attorneys' fees [the union] has incurred raising and addressing this issue."

On March 2, 2020, the Court denied (Filing No. 76) Noah's Ark's unsubstantiated request for relief and ordered Noah's Ark "to show cause why it should not be held in civil contempt and sanctioned for failing to comply with the" scheduling order. Both parties have responded to the Court's order to show cause.

After setting forth a timeline related to the orientation sessions (Filing No. 77), Noah's Ark states it "will <u>immediately resume</u> conducting the bi-weekly orientation sessions commencing . . . Wednesday, March 11, 2020, at 2:00 p.m., and submitting to the Union an updated list of employees and a list of 25 employees scheduled to attend each orientation session." Noah's Ark then summarily "requests that the Court not hold it in

---

[1] The union reports it has also (1) "filed an unfair labor practice charge against" Noah's Ark under the National Labor Relations Act, *see* 29 U.S.C. § 158(a)(5) and NLRB Case No. 14-CA-255658, and (2) asked the National Labor Relations Board to review Noah's Ark's actions and seek "additional contempt proceedings in *Sawyer v. Noah's Ark Processors, LLC*, 4:19-cv-3016."

civil contempt and sanction for failing to comply with the Court's December 20, 2019, Order, after reaching a legitimate good-faith impasse in negotiations and implementing its final offer not providing for orientation sessions and immediately resuming orientation sessions after its request for relief has been denied." It says no more.

For its part, the union complains the most-recent orientation session still did not comply with the scheduling order. The union also contends that even if Noah's Ark "had cured its contemptuous conduct, sanctions would still be appropriate because [the union] should not have needed to file its latest round of filings." The union again "asks the Court to fine [Noah's Ark] for its failure to comply with the [scheduling order] and award [the union] its attorneys' fees in bringing this matter to the Court's attention." The union's request has merit.

Federal courts have inherent authority "to fashion an appropriate sanction for conduct which abuses the judicial process." *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. ___, ___ 137 S. Ct. 1178, 1186 (2017) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991)). That authority includes sanctioning "a party's failure to comply with a 'clear and specific' underlying order." *Chaganti & Assocs., P.C. v. Nowotny*, 470 F.3d 1215, 1223 (8th Cir. 2006) (quoting *Int'l Bhd. of Elec. Workers, Local Union No. 545 v. Hope Elec. Corp.*, 293 F.3d 409, 418 (8th Cir. 2002)).

If the Court finds clear and convincing evidence of civil contempt, it may impose sanctions "either to coerce the defendant into compliance with a court order or to compensate the complainant for losses sustained, or both." *Chi. Truck Drivers v. Bhd. Labor Leasing*, 207 F.3d 500, 505 (8th Cir. 2000). One permissible way to sanction a defendant for civil contempt is to order it to pay the complainant's reasonable attorney fees and costs. *See Goodyear*, 581 U.S. at ___, 137 S. Ct. at 1186 (discussing the important distinction between compensatory and punitive sanctions). "[T]he court can shift only those attorney's fees incurred because of the misconduct at issue." *Id.*

Throughout this case, the Court has repeatedly threatened contempt sanctions against Noah's Ark for its recurrent noncompliance with the arbitration agreement and the Court's orders but has been reluctant to impose them. The Court remains "unwilling to micromanage the orientation process and the parties' ongoing relationship . . . under the auspices of enforcing the confirmation order" and refuses to handle every minor dispute and grievance in a contempt proceeding.

But Noah's Ark's sweeping cancellation of the court-ordered orientation sessions without first conferring with the union and asking the Court for relief from the scheduling order demands a sharper response. "One of the overarching goals of a court's contempt power is to ensure that litigants do not anoint themselves with the power to adjudge the validity of orders to which they are subject." *Chi. Truck Drivers*, 207 F.3d at 504.

In its brief response to the show-cause order, Noah's Ark states it will comply with the scheduling order going forward.[2] But it has not adequately explained why it should not be held in civil contempt for failing to follow this Court's clear and specific scheduling order in the past. Based on its unilateral determination of impasse, Noah's Ark anointed itself "with the power to adjudge the validity of orders to which [it is] subject" and cancelled the court-ordered orientation sessions. *Id.* It simply can't do that.

Accordingly, the Court finds clear and convincing evidence that Noah's Ark is in contempt of the scheduling order. As a compensatory sanction, the Court will award the union the reasonable attorney fees and costs the union necessarily incurred in presenting this issue to the Court.

---

[2]The union's initial report does not bode well for the Court's expectation that the parties will finally work together as professionals to comply with the arbitration award and this Court's orders regarding the orientation sessions. Now more than ever, the Court has neither the time nor the inclination to mediate every minor dispute between the parties. Of course, if the COVID-19 pandemic or any other legitimate basis leaves the parties unable to comply with the scheduling order, they should confer with each other and then seek appropriate relief from the Court. *See* Fed. R. Civ. P. 60(b)(6).

For the foregoing reasons,

IT IS ORDERED:

1. The union's request for sanctions (Filing No. 70) is granted in part and denied in part as set forth in this order.
2. Noah's Ark is found in contempt of the Court's December 20, 2019, Order (Filing No. 67).
3. Noah's Ark shall immediately allow the union to resume holding orientation sessions in accordance with that order. The orientation schedule will be extended as needed to allow for additional sessions to make up for any sessions Noah's Ark cancelled.
4. Noah's Ark must pay the union the reasonable attorney fees and costs the union necessarily incurred in presenting this issue to the Court, in an amount to be determined by the Court at a later date.
5. The union must file a statement of attorney fees and costs and any supporting affidavits by April 30, 2020.
6. Noah's Ark must file any response by May 14, 2020.
7. The union's request for sanctions is denied in all other respects.

Dated this 4th day of April 2020.

BY THE COURT:

*Robert F. Rossiter, Jr.*
Robert F. Rossiter, Jr.
United States District Judge